UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-21360-RAR

**BARTON C. HILL**,

    Petitioner,

v.

**RICKY DIXON, SECRETARY OF
DEPARTMENT OF CORRECTIONS**,

    Respondent.
_____/

## ORDER DISMISSING 28 U.S.C. § 2254 PETITION

**THIS CAUSE** is before the Court upon a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, in which the Petitioner, Barton C. Hill, attacks the constitutionality of a sentence imposed by the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, Case No. F09-025236. *See* Petition ("Pet.") [ECF No. 1]. In conducting a preliminary review as required by Rule 4 of the Rules Governing Section 2254 Proceedings, the Court expressed concern that the Petition "may be untimely under the provisions of 28 U.S.C. § 2244(d)." Limited Order to Show Cause [ECF No. 3] at 1. To better ascertain the Petition's timeliness, the Court ordered Respondent "to show cause as to whether the Petition is timely." *Id.* Respondent filed a Response to the Court's Limited Order to Show Cause, arguing that the Petition is untimely. *See* Response to Order to Show Cause ("Resp.") [ECF No. 14]. Petitioner also filed a "Motion to Show Cause Regarding Timeliness," asserting that his Petition is only untimely "due to extraordinary circumstances beyond the Petitioner's control." Motion to Show Cause ("Mot.") [ECF No. 7] at 4. After considering the Response and Motion, the Court finds that the instant Petition is time-barred under § 2244(d) and must be **DISMISSED**.

## PROCEDURAL HISTORY

To determine the Petition's timeliness, the Court must first recount the relevant (but lengthy) procedural history of Petitioner's state-court criminal judgment.  On July 31, 2009, Petitioner, who was a fifteen-year-old juvenile at the time, was charged as an adult in state court with robbery with a firearm and attempted felony murder with a deadly weapon.  *See* Information [ECF No. 15-1] at 55.[1]  As part of a plea agreement with the State, Petitioner was designated a "youthful offender" under Fla. Stat. § 958.04 and was sentenced to "two (2) years of Community Control followed by four (4) years of reporting probation."  Sentencing Order [ECF No. 15-1] at 141; *see also* Original Judgment and Sentence [ECF No. 15-1] at 60–70.  As part of his community control, Petitioner was required to attend and complete a "Boot Camp Program" before being released back into the community to reside, exclusively, at his father's home.  Sentencing Order [ECF No. 15-1] at 141.

On September 19, 2012, Petitioner's probation officer informed the state court that Petitioner had violated the terms of his community control by committing four new law violations—*to wit*, two counts of second-degree murder and two counts attempted second-degree murder—and that he moved from his father's home without receiving the court's permission.  *See* Affidavit Violation of Community Control [ECF No. 15-1] at 72–73.  All told, the State eventually alleged that Petitioner had committed thirteen substantive and technical violations of community control—with the earliest violation occurring on July 24, 2012, a little more than a month after Petitioner had been released back into the community on June 11, 2012.  *See* Sentencing Order

---

[1] At the time the Information was filed, Florida law gave the state attorney discretion to "direct file" an information—instead of bringing a case in juvenile court—if: (1) the child was "14 or 15 years of age at the time the alleged offense was committed," (2) the child was charged with certain violent felony offenses (e.g., robbery, arson, sexual battery, murder, etc.), and (3) the state attorney believed that "the public interest requires that adult sanctions be considered or imposed."  Fla. Stat. § 985.557(1)(a) (2009).

[ECF No. 15-1] at 140–46; Seventh Amended Affidavit Violation of Community Control [ECF No. 15-1] at 131–35.  The state court held a hearing on all thirteen violations between October 19, 2017, and October 27, 2017, concluded that the State had proven that Petitioner had committed all of the violations, and revoked Petitioner's community control.  *See* Sentencing Order [ECF No. 15-1] at 146.  On February 9, 2018, the state court resentenced Petitioner to forty (40) years in the custody of the Florida Department of Corrections.  *See id.* at 151; *see also* New Judgment and Sentence [ECF No. 15-1] at 153–59.

Petitioner appealed the revocation of his community control and new sentence to Florida's Third District Court of Appeal ("Third DCA").  While on direct appeal, the Office of the Public Defender—who was representing Petitioner—filed a motion to withdraw and memorandum brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).  *See* Memorandum Brief [ECF No. 15-2] at 6–20.  On **May 15, 2019**, the Third DCA granted the *Anders* motion and summarily affirmed Petitioner's conviction and sentence.  *See Hill v. State*, 298 So. 3d 581 (Fla. 3d DCA 2019).

On **November 22, 2019**,[2] Petitioner filed a petition for writ of habeas corpus in the Third DCA alleging that appellate counsel was ineffective for failing to raise "three (3) specific and legally appealable issues" on direct appeal.  State Habeas Petition [ECF No. 15-2] at 25.  The Third DCA summarily denied the petition on **December 5, 2019**.  *See Hill v. State*, 302 So. 2d 337 (Fla. 3d DCA 2019).

On **January 21, 2021**, Petitioner filed a motion to correct illegal sentence under Fla. R. Crim. P. 3.800(a) ("First 3.800(a) Motion").  *See* First 3.800(a) Motion [ECF No. 15-2] at 30–32.  The state trial court denied the Motion on February 9, 2021.  *See* Order Denying First 3.800(a)

---

[2] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).  "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

Motion [ECF No. 15-2] at 35. Petitioner appealed the denial, but, on July 21, 2021, the Third DCA affirmed the lower court in a brief opinion, *see Hill v. State*, 322 So. 3d 237, 237 (Fla. 3d DCA 2021), and issued its mandate on **August 23, 2021**, *see* First 3.800(a) Motion Appeal Docket [ECF No. 15-2] at 68.

Petitioner then filed a motion for postconviction relief under Fla. R. Crim. P. 3.850 on **April 13, 2021** ("First 3.850 Motion"). *See* First 3.850 Motion [ECF No. 15-2] at 70–78. Petitioner then amended the Motion on April 26, 2021. *See* Amended First 3.850 Motion [ECF No. 15-2] at 80–93. The state postconviction court denied the Motion on June 7, 2021. *See* Order Denying Amended First 3.850 Motion [ECF No. 15-2] at 96–97. Petitioner appealed, but the Third DCA summarily affirmed the state postconviction court on August 11, 2021. *See Hill v. State*, 325 So. 3d 20 (Fla. 3d DCA 2021). The Third DCA's mandate issued on **September 21, 2021**. *See* First 3.850 Motion Appeal Docket [ECF No. 15-2] at 174. Although Petitioner attempted to invoke the Florida Supreme Court's discretionary jurisdiction, his case was dismissed since the Florida Supreme Court "lack[ed] jurisdiction to review an unelaborated decision from a district court of appeal[.]" *Hill v. State*, No. SC21-1295, 2021 WL 4168102, at *1 (Fla. Sept. 14, 2021).

On **October 4, 2021**, Petitioner filed a second motion to correct illegal sentence under Rule 3.800(a) ("Second 3.800(a) Motion"). *See* Second 3.800(a) Motion [ECF No. 15-3] at 2–4. The state postconviction court denied it shortly thereafter on October 15, 2021. *See* Order Denying Second 3.800(a) Motion [ECF No. 15-3] at 6. The Third DCA affirmed and issued its mandate on **February 4, 2022**. *See Hill v. State*, 338 So. 3d 877 (Fla. 3d DCA 2021); Second 3.800(a) Appeal Docket [ECF No. 15-3] at 23.

Petitioner filed a third Rule 3.800(a) motion on **February 14, 2022** ("Third 3.800(a) Motion"), *see* Third 3.800(a) Motion [ECF No. 15-3] at 25–29, and then amended it on February

18, 2022, *see* Amended Third 3.800(a) Motion [ECF No. 15-3] at 31–36.  The state postconviction court denied the Motion on March 24, 2022.  *See* Order Denying Amended Third 3.800(a) Motion [ECF No. 15-3] at 39.  The Third DCA summarily affirmed on May 4, 2022, *see Hill v. State*, 338 So. 3d 884 (Fla. 3d DCA 2022), and then issued its mandate on **June 3, 2022**, *see* Third 3.800(a) Appeal Docket [ECF No. 15-3] at 172.  Petitioner once again tried to invoke the Florida Supreme Court's discretionary jurisdiction, but the appeal was again dismissed for lack of subject matter jurisdiction.  *See Hill v. State*, No. SC22-813, 2022 WL 2253686, at *1 (Fla. June 23, 2022).

Finally on **July 31, 2022**, Petitioner filed a second rule 3.850 motion for postconviction relief ("Second 3.850 Motion").  *See* Second 3.850 Motion [ECF No. 15-3] at 175–96.  On December 5, 2022, the state postconviction court denied the Motion after finding that it was "untimely" since "the two-year window to file a timely motion closed at the end of June in 2021." Order Denying Second 3.850 Motion [ECF No. 15-4] at 5.  The Third DCA affirmed the state postconviction court on **May 17, 2023**, but, as of the date of this Order, has not issued a mandate.  *See Hill v. State*, No. 3D23-22, 2023 WL 3485645, at *1 (Fla. 3d DCA May 17, 2023).  The instant Petition was filed during the pendency of that appeal, on **April 4, 2023**.  *See* Pet. at 15.

## TIMELINESS ANALYSIS

### A.  28 U.S.C. § 2244(d)(1)(A)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year statute of limitations for state prisoners to bring § 2254 petitions in federal court.  *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.").  That limitation period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).   AEDPA's limitations period is tolled during "[t]he time . . . which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).  To be "properly filed," as that term is used, a postconviction motion's "delivery and acceptance [must be] in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

A judgment becomes final under § 2254(d)(1)(A) when "[the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).  As the Eleventh Circuit has explained, "the time for pursuing review in the Supreme Court of the United States is governed by Supreme Court Rules 13.1 and 13.3, which together provide that a petition for a writ of certiorari to review a judgment . . . entered by a state court of last resort . . . is timely when it is filed . . . within 90 days after entry of the judgment . . . and not from the issuance date of the mandate." *Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 617–18 (11th Cir. 2019) (cleaned up).  Stated plainly, for petitioners who do not (or cannot) seek

discretionary review from the Florida Supreme Court, the judgment becomes final 90 days after the District Court of Appeal enters a judgment affirming the conviction and sentence. *See Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275–76 (11th Cir. 2006). In this case, Petitioner's judgment was affirmed on May 15, 2019, so his conviction became final ninety days later on August 13, 2019. *See Hill v. State*, 298 So. 3d 581 (Fla. 3d DCA 2019).[3] AEDPA's limitations period began to toll the next day—August 14, 2019. *See* FED. R. CIV. P. 6(a)(1) ("When the period is stated in days or a longer unit of time . . . exclude the day of the event that triggers the period.").

Petitioner did not file an "application for State post-conviction or other collateral review" until November 22, 2019, when he filed a *pro se* petition for writ of habeas corpus in the Third DCA alleging that his appellate counsel had rendered ineffective assistance of counsel by filing an *Anders* brief instead of raising "three (3) specific and legally appealable issues[.]" State Habeas Petition [ECF No. 15-2] at 25. That means there were **101 days** of untolled time between the date Petitioner's conviction became final (August 13, 2019) and the date Petitioner filed a motion seeking collateral relief in state court (November 22, 2019). *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("The AEDPA clock continues to run until the individual seeking review files a state motion for post-conviction relief."). AEDPA's limitations period remained tolled until the Third DCA denied this habeas petition on December 5, 2019. *See id.* ("The AEDPA clock resumes running when the state's highest court issues its mandate disposing of the motion for post-conviction relief." (citing *Lawrence v. Florida*, 549 U.S. 327, 331–32 (2007))).[4]

---

[3] Respondent incorrectly asserts that Petitioner's judgment became final on April 14, 2019. *See* Resp. at 24.

[4] Since the Third DCA disposed of Petitioner's habeas petition without issuing a mandate, the AEDPA clock resumed the day after the habeas petition was denied. *See* State Habeas Petition Appeal Docket [ECF No. 15-2] at 22.

Petitioner did not file another "application for State post-conviction or other collateral review" until January 21, 2021, when he filed his First Rule 3.800(a) Motion in the state postconviction court. *See* First 3.800(a) Motion [ECF No. 15-2] at 30–32. Respondent correctly calculates that "**413 untolled days** passed" between the Third DCA denying Petitioner's habeas petition on December 5, 2019, and Petitioner filing the First Rule 3.800(a) Motion on January 21, 2021. Resp. at 24 (emphasis added). By adding these two periods of untolled time (101 days plus 413 days), the Court calculates that, by January 21, 2021, **514 days** of untolled time had already passed since "the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A). Since the Petition was filed after more than one-year of untolled time elapsed, it is clearly untimely under § 2244(d)(1)(A).[5]

### B. 28 U.S.C. § 2244(d)(1)(B)–(D)

Even if a Petition is untimely under § 2244(d)(1)(A), a habeas petitioner can still avail himself to one of the three other limitations periods available in § 2244(d)(1). Unfortunately for

---

[5] Of course, even more untolled time has passed since January 21, 2021. AEDPA's clock remained tolled from January 21, 2021, until September 21, 2021, since either the First 3.850 Motion or the First 3.800(a) Motion were "properly filed" during this period of time. *See* 28 U.S.C. § 2244(d)(2). Petitioner's unsuccessful attempts to invoke the Florida Supreme Court's discretionary jurisdiction did not extend this tolling period. *See Bismark v. Sec'y, Dep't of Corr.*, 171 F. App'x 278, 280 (11th Cir. 2006) ("Though Bismark filed a notice with the Florida Supreme Court on June 12, 2001, seeking review of the denial of the motion, the § 2244(d) limitations period was not tolled further because his petition with the Florida Supreme Court was not 'properly filed' since the order appealed from was *per curiam*."). The limitations period began to run again from September 21, 2021, until Petitioner filed his Second 3.800(a) Motion on October 4, 2021, which means another **13 days** of untolled time passed. Once the Third DCA affirmed the denial of the Second 3.800(a) Motion and issued its mandate on February 4, 2022, **10 more days** of untolled time elapsed until on the Third 3.800(a) Motion was filed on February 14, 2022. Once the Third 3.800(a) Motion was fully resolved on June 3, 2022, another **305 days** elapsed until the Petition was filed on April 4, 2023. The Court finds that Petitioner's Second 3.850 Motion had no effect on the limitations period since the state postconviction court concluded that it was untimely under state law. *See* Order Denying Second 3.850 Motion [ECF No. 15-4] at 5; *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1352 (11th Cir. 2018) ("[A] state post-conviction motion is not, and cannot ever be, 'properly filed' if it was rejected by the state court as untimely."). All told, then, **842 days** of untolled time separates the day Petitioner's judgment became final from the day the Petition was filed in this Court.

Petitioner, he fails to show that there was an "impediment to filing an application created by State action," a "newly recognized [constitutional right] by the Supreme Court . . . made retroactively applicable to cases on collateral review," or a new "factual predicate" which could not have been discovered earlier "through the exercise of due diligence," so the Petition is not timely under any of § 2244(d)(1)'s other provisions either. 28 U.S.C. § 2244(d)(1)(B)–(D); *see also Alexander v. Dixon*, No. 23-CV-60262, 2023 WL 2646262, at *4 (S.D. Fla. Mar. 27, 2023) (finding that a § 2254 petition "cannot be considered timely under [AEDPA's] alternative limitation periods" where the petitioner failed to allege that any of them applied).

### C. Other Timeliness Exceptions

In addition to § 2244(d)(1), the Supreme Court has held that there are two extremely limited exceptions where a habeas petitioner can bring an otherwise untimely § 2254 petition. *See Fast v. Sec'y, Dep't of Corr.*, 826 F. App'x 764, 766 (11th Cir. 2020) (addressing the two exceptions). *First*, the petitioner can avail himself of "equitable tolling" by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence*, 549 U.S. at 336. *Second*, a habeas petitioner who makes "a credible showing of actual innocence [can] pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The habeas petitioner bears the burden of presenting evidence showing that he or she is entitled to rely on either of these exceptions. *See Jones v. United States*, 304 F.3d 1035, 1040 (11th Cir. 2002) ("The petitioner has the burden of proving entitlement to equitable tolling by showing that extraordinary circumstances that were both beyond his control and unavoidable even with diligence prevented filing the petition on time." (citation and internal quotation marks omitted)); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the

actual innocence claim 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995))).

Petitioner does not explicitly rely on either of these exceptions. Instead, he argues that he can demonstrate "cause for [the] procedural default" and that "any failure to review the federal claims will result in a fundamental miscarriage of justice." Pet. at 13–14; *see also* Mot. at 3–5. Petitioner also makes a vague allegation that the lateness of his Petition can be attributed to a delay in receiving certain documents from the state courts. *See* Mot. at 2–3. The Court notes that Petitioner's reliance on concepts such as "procedural default," "cause and prejudice," and "fundamental miscarriages of justice" are inapposite since they concern the <u>exhaustion</u> of federal claims in state court—not the timeliness of those same claims under AEDPA. *See Williams v. Sec'y, Fla. Dep't of Corr.*, No. 18-CV-859, 2021 WL 3288193, at *3 (M.D. Fla. Aug. 2, 2021) ("The 'cause and prejudice' standard Petitioner references applies to the issue of exhaustion and cause to excuse a procedural default premised on a state court's independent and adequate state procedural rule. This 'cause and prejudice' standard does not pertain to the timeliness of a federal habeas petition. As a result, to the extent that Petitioner relies on procedural default case law to excuse the untimely filing of this action, such authority is inapplicable." (internal citation omitted)). Instead, the Court will liberally construe the Motion as making an equitable tolling argument.

Petitioner has failed to prove that he is actually innocent or that equitable tolling should apply. First, Petitioner does not proffer "new reliable evidence" which, if presented at trial, would have made it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt," so he does not come close to demonstrating actual innocence. *Schlup*,

513 U.S. at 327.  Second, the "delays" Petitioner complains about concern the disposition of his Second 3.850 Motion.  *See* Mot. at 1–3.  As the Court explained above, over 500 days of untolled time had already passed before the Second 3.850 Motion was filed in state court, and, on top of that, the Second 3.850 Motion was an untimely and improperly filed state postconviction motion that could not have tolled AEDPA's limitations period anyway.  *See Jones*, 906 F.3d at 1352.  Since these "delays" would not have had any effect on the timeliness of the Petition, Petitioner has failed to make a specific showing that, absent some extraordinary circumstance, he would have been able to file his § 2254 petition on time.  *See Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014) ("The petitioner has the burden of establishing his entitlement to equitable tolling; his supporting allegations must be specific and not conclusory.").

Accordingly, because the Petition is not timely under § 2244(d)(1) or under any of the limited equitable exceptions, the Petition must be dismissed as time-barred.

## EVIDENTIARY HEARING

No evidentiary hearing is warranted in this matter.  *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] district court need not hold a hearing if the allegations are patently frivolous, based upon unsupported generalizations, or affirmatively contradicted by the record. (cleaned up)).

## CERTIFICATE OF APPEALABILITY

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA").  A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition.  Rather, to pursue an appeal, a petitioner must obtain a COA.  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims" the movant must also show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, reasonable jurists would not find the Court's procedural ruling that the Petition is untimely to be debatable. Accordingly, a COA is denied and shall not issue.

## CONCLUSION

Having carefully reviewed the record and governing law, it is

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DISMISSED**. All pending motions are **DENIED as moot**. Any demands for an evidentiary hearing are **DENIED**, and a certificate of appealability shall **NOT ISSUE**. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami Florida, this 7th day of June, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**